***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Chapman.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. An employer-employee relationship existed between plaintiff and defendant-employer on July 3, 2003.
3. Corona Concrete Company, Inc. was insured by Builders Mutual Insurance Company on the date of plaintiff's injury, July 3, 2003.
4. On the date of plaintiff's injury, his average weekly wage was $909.44, which results in a weekly compensation rate of $606.32.
In addition the parties stipulated into evidence the following:
 1. Packet of medical records and reports.
 2. Packet of Industrial Commission forms.
 3. Functional capacity evaluation report dated February 8, 2006.
 4. Vocational rehabilitation records.
 5. Form 24, order and related documents.
 6. Job search logs.
The Pre-Trial Agreement dated November 15, 2006, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-three years old with a seventh grade education from the schools in Mexico. Although he speaks some English, Spanish is his native language and his English skills are limited. As of the date of *Page 3 
hearing, he had lived in the United States between sixteen and eighteen years. He testified that his wife was American and he communicated with her in English.
2. On or about July 3, 2003, plaintiff was employed by defendant as a concrete finisher. He sustained a compensable injury by accident that day when he lifted a heavy wooden form used for concrete construction and hurt his back. He did not get medical treatment until July 7 when he went to the emergency room, where he was given medication and referred to Dr. Curlee, an orthopedic surgeon. Dr. Curlee examined him on July 11, 2003. On that occasion, plaintiff complained of low back pain radiating to his right leg with intermittent numbness in the leg. Dr. Curlee prescribed a steroid dose pack and physical therapy. Plaintiff's condition improved and he was noted to be working at light duty at the next appointment. However, he continued to experience back and leg pain, so the doctor subsequently ordered an MRI.
3. The MRI revealed a disc herniation at L3-4, which was impinging on the right nerve root, a smaller central disc herniation at L4-5, which appeared to have a mass effect on both nerve roots, and a bulging disc at L5-S1. Dr. Curlee's physician's assistant then ordered epidural steroid injections. Dr. Crowl performed the injections in September and October. He then evaluated plaintiff on November 14, 2003 and noted that, although plaintiff's symptoms were significantly better, he was doing heavy labor at work and sometimes could hardly walk at the end of the day. Consequently, the doctor referred him back to Dr. Curlee for further treatment.
4. Dr. Curlee then saw plaintiff on November 17 and recommended that he try a different medication. At the next appointment on December 1, 2003, plaintiff was still experiencing low back and right leg pain and was interested in pursuing surgery. Since he had abnormalities at three levels of his lumbo-sacral spine, Dr. Curlee ordered nerve blocks to *Page 4 
attempt to determine which level was causing his pain. On December 31, 2003, the doctor performed surgery to decompress the L3-4 interspace.
5. Defendants then prepared a Form 63 and began paying compensation to plaintiff for temporary total disability retroactive to December 14, 2003. They thereby admitted liability for benefits under the Workers' Compensation Act.
6. Following the operation, Dr. Curlee instructed plaintiff to walk and later to do exercises. In March 2004 he released plaintiff to return to light duty work, starting at four hours per day and gradually progressing to eight hours per day. However, plaintiff's employer could not accommodate the restrictions. On April 12, 2004 plaintiff reported that he was still having low back pain radiating to his right thigh and occasionally to his left thigh. Concerned that the symptoms were coming from a different level in the spine, Dr. Curlee ordered another MRI. When he next saw plaintiff on May 19, the test had been performed and it showed apparent decompression of L3-4 but there was a large annular tear at L4-5 and a moderate disc herniation at L5-S1. It was the doctor's impression that plaintiff's symptoms were coming from the annular tear, so he ordered epidural steroid injections.
7. Dr. Curlee last saw plaintiff on June 16, 2004. He was planning to move out of state at that time, so he recommended that plaintiff undergo a discogram and referred him to Dr. Rodger, another orthopedic surgeon, for evaluation and follow-up treatment. Dr. Rodger examined plaintiff on July 16, 2004. Since plaintiff's symptoms and findings on examination did not correlate well with the MRI findings, Dr. Rodger did not believe he was a candidate for fusion surgery. He did not want such an operation in any event, so Dr. Rodger released him to return to work with restrictions. Following the appointment, plaintiff tried to wash his car and experienced significant worsening of his symptoms. Consequently, Dr. Rodger reevaluated him *Page 5 
on July 27, 2004 and lowered the amount he could lift to ten pounds as well as restricted him from repetitive bending and stooping.
8. Defendants then contracted with Concentra to provide plaintiff with vocational placement services, since he could not return to his former job. Carlos Encinas was assigned to plaintiff's case and the vocational consultant worked with plaintiff for over a year but was unable to locate an employer who would hire plaintiff. Mr. Encinas noted that most employers wanted a high school graduate, someone with good communication skills in English and someone with some computer skills. He was not able to identify many job leads for plaintiff with the restrictions specified. Paul Clawson worked with plaintiff for several months after Mr. Encinas and was also unsuccessful in helping plaintiff find employment.
9. In March 2005, plaintiff was referred to Coastal Rehabilitation Medicine for evaluation regarding his persistent low back pain. He was seen there on March 17, 2005 by an unknown provider who recommended manual therapy with a physical therapist and who prescribed anti-inflammatory and muscle relaxant medication for him. Plaintiff next saw Dr. Wall on April 19, 2005. Although he still had constant pain, the therapy had helped him significantly. During the next five months, Dr. Wall treated him with several medications and with more physical therapy, and his condition improved further. Consequently, on November 29, 2005 Dr. Wall ordered a functional capacity evaluation.
10. The functional capacity evaluation was performed on February 8, 2006 and indicated that plaintiff could perform heavy work at that time. Dr. Wall then saw him on February 21, 2006. He was still experiencing constant pain, which varied in intensity, he was taking anti-inflammatory, pain and muscle relaxant medication, he was having trouble sleeping and his symptoms were still limiting the activities in which he engaged. However, based upon *Page 6 
the functional capacity evaluation results, Dr. Wall released him to return to work as a concrete finisher. The doctor also requested that he try to decrease the amount of medication he was taking.
11. According to the stipulated medical records, plaintiff last saw Dr. Wall on May 26, 2006. After his previous appointment with the doctor, he had undergone surgery for a Chiari malformation, which was not related to his injury at work. The condition had been causing him to experience headaches and tremors. Due to the surgery, he had not been able to work for a period of time. Plaintiff was also experiencing some back pain radiating to his right leg and had found that he could not reduce the amount of medication he was taking without the pain worsening. Dr. Wall added a prescription for Lyrica to see if it would help further control his pain.
12. Plaintiff had diligently looked for employment since being released to return to work by Dr. Rodger in July 2004. He had found and pursued more potential job leads than the vocational consultants assigned to help him had found. However, he was unable to obtain a job offer. The amount of medication he was taking was a problem at times. However, his limited education and inability to write in English were also factors. In April 2006 after plaintiff had been released to return to work without restrictions, defendants stopped providing vocational placement assistance and submitted a Form 24 request to stop payment to the Industrial Commission on the basis that plaintiff had been given full duty work release and was therefore no longer disabled. By Administrative Decision and Order filed July 24, 2006, the application was granted and defendants were allowed to stop payment of benefits effective May 10, 2006. Plaintiff appealed. *Page 7 
13. As a result of the injury by accident giving rise to this claim, plaintiff continued to experience back and leg pain up to the date of the hearing before the Deputy Commissioner. The MRIs performed after the injury demonstrated abnormalities at three levels of his lumbo-sacral spine. Because of chronic pain, he had to take numerous medications in order to give the effort he gave on the functional capacity evaluation. Even though he was released to return to full duty work, his injury had left him with ongoing symptoms and the need to take multiple medications in order to function. His employer had gone bankrupt by the time his restrictions were lifted and could not offer work to him. He looked for other employment diligently but was unable to find a job as of the date of the hearing before the Deputy Commissioner.
14. Dr. Rodger rated plaintiff with ten percent permanent partial impairment of the back. Although plaintiff was released to return to work without restrictions, he retained impairment due to the injury because of chronic pain, because of abnormalities in his lumbo-sacral spine and because of his need to take multiple medications in order to function. His inability to find work was related to his residual impairment.
15. Since plaintiff has proven that he was unable to find employment due to his residual impairment despite reasonable efforts on his part to obtain a job, he has established ongoing total disability from May 10, 2006, the date when defendants were allowed to stop paying compensation, until December 7, 2006 the date of the hearing before the Deputy Commissioner. Consequently, the Form 24 was improvidently granted.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following: *Page 8 
 CONCLUSIONS OF LAW
1. In that plaintiff experienced ongoing impairment from his injury at work due to chronic pain, due to abnormalities in his lumbo-sacral spine and due to his need to take multiple medications in order to function, and in that he was unable to find employment because of his ongoing impairment despite reasonable effort on his part, plaintiff proved that he remained totally disabled from May 10, 2006, when defendants were allowed to stop payment, until the date of hearing before the Deputy Commissioner on December 7, 2006. Consequently, the Form 24 request to stop payment was improvidently granted. N.C. Gen. Stat. §§ 97-29;97-18.1; Russell v. Lowe's Products Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). (1993).
2. Plaintiff is entitled to compensation for total disability at the rate of $606.32 per week from May 10, 2006 through the date of hearing on December 7, 2006 and continuing thereafter until he returns to work or until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowe's Products Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
3. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. N.C. Gen. Stat. §§97-2(19); 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The Administrative Decision and Order granting defendants' Form 24 request to stop payment is set aside. *Page 9 
2. Defendants shall pay compensation to plaintiff for total disability at the rate of $606.32 per week from May 10, 2006 through December 7, 2006 and continuing thereafter until he returns to work or until further order of the Industrial Commission. That portion of this compensation which has accrued shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
3. Defendant shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
4. An attorney's fee in the amount of twenty percent of the accrued compensation is hereby approved for plaintiff's counsel, which fee shall be deducted from the aforesaid award and paid directly to Mr. Green. This fee reflects the fact that counsel did not depose the medical witnesses or submit contentions in the case.
5. Defendants shall pay the costs.
This the 19th day of November, 2007.
S/______________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ DIANNE C. SELLERS *Page 10 
COMMISSIONER *Page 1